People of the State of Illinois v. Thomas Moffitt Your Honor, counsel, may it please the Court, my name is Kelly Stacey, appearing on behalf of the people. A trial court's factual findings in a ruling on a motion to suppress are not to be reversed unless they are against the manifest way of the evidence. This Court is free to apply findings of fact to the law on the ultimate legal question of whether the motion to suppress should have been granted. In this case, the trial court made findings of fact, but it failed to consider them under the brutality of the circumstances to determine whether the detaining officer had a particularized and objective basis for suspecting legal wrongdoing. In this case, the trial court found that Trooper Bo Marlow pulled the defendant over for obstruction of his windshield because he had a suspended and Christmas-free deodorizer from his rearview mirror. The process that the trooper employed from pulling the defendant over to running the computer checks to issuing the warning ticket took 14 minutes, according to the trial court. Trooper Marlow asked the defendant for consent to search, and the defendant refused. But after the warning ticket was issued, the trooper told the defendant that he was calling for a drug dog to check the car for drugs in the trunk. And the trooper did call for the drug dog, but one didn't arrive until about 15 minutes after the defendant was actually pulled over. And the reason the trooper said that he requested the drug dog was because the defendant appeared to be nervous. His bottom lip was quivering. His hands were shaking. He had labored breathing. He yawned and stretched. His carotid artery was pulsating rapidly. He was breathing deeply. He was licking his lips repeatedly and rubbing his forehead. Now, Ms. Stacy, generally, well, I guess now we frequently have the video to rely on in addition to testimony of the officer. And I painfully watched all 60 minutes of that tape last night. And I would say that there was the opportunity, and I'm sure that the judge watched portions of it as well. I think there is very much room for disagreement for what you just said and perhaps what the judge concluded on what he saw. Well, these facts that I just recited were directly from the trial court order, and the order does in fact say that the judge watched the videotape. He didn't find all of the factors, but he did find that the trooper noted there was extreme nervousness and all of those factors I mentioned, the quivering of the lips, the rubbing of the forehead, repeated licking of the lips. So it's a matter of whether or not those factors, and under the training and education and experience of the officer, would that lead a reasonable person to conclude that a crime had been committed. And in this case, I believe that those factors do weigh in in favor of the trooper's determination that something else was going on here. The quickest way for him to determine whether or not there were drugs in the car, absent consent from the defendant, was calling for a drug dog. This was not a canine unit. The first place that the dispatcher tried to get the drug dog from, one was not available. Aren't you jumping ahead a little bit, though? I mean, he has to have some reasonable suspicion to think that he needs a drug search after he has refused permission after the defendant. That's right, Your Honor, and I think these issues about what the trooper saw with the extreme nervousness, also that the license plate was from Arizona, the defendant was from Ohio. There's a problem? Well, the trooper in his training and experience realized that Arizona is the biggest area in the United States for illegal drug activity. So you can take a whole state and just – wouldn't that be almost like profiling? You can say that if you have a license plate from Arizona, you can stop them? Well, I think the additional factor here, Your Honor, is that this defendant was from Ohio or going to Ohio. He had no ties to Ohio. He didn't even know the person's last name who owned the vehicle. Of course, the judge doesn't know that when he stops them. I'm sorry, Your Honor. The judge does not know that information when he stops. No, the trooper did not know that immediately when he stopped, and I think that's the point here that as things mounted within that initial 14 minutes, more and more suspicions began to be aroused on the part of the trooper, including the fact that the defendant had indicated that – Yeah, if he had Texas, could you do their Texas suit? I believe Texas is also a hospital. Is there a license plate there you can do for Texas suit? I think in this case it was an Arizona plate, but – Right. I mean, somebody had one in Texas? I think so. Also, the stories about the travel plans between the defendant and the passenger did not seem to match up, and it seemed that the trial court did not focus on what factors led to reasonable suspicion, but instead just looked at the time it took for the drug dog to get there. It concluded that 50 minutes just was too long, but this court in People v. O'Dell has determined that a detention lasting up to 90 minutes is not too long under the specific circumstances, and it all depends on reasonable circumstances in the case, what factors are there that prompt the trooper to believe drug activity is afoot, and there was also an overwhelming odor of air freshener when the trooper approached the vehicle. But under the totality of the circumstances in this case, I believe they do favor Trooper Marlin's determination that the defendant may have been trafficking in drugs. The record shows Trooper Marlin did not delay in requesting a drug dog and that the totality of the circumstances would lead a reasonable person to suspect the defendant was involved in drug activity. You know, Ms. Stacy, I have not read the actual order, but you have part of the order? It's a two-page order, Your Honor, pages 36 and 37 of the Common Law. Okay. And in your brief, I'm looking at Mr. Gleason's brief on page 6. He references that the trooper testified that there were all these visible indicia of nervousness. So you're saying that the judge found them as well? Those factors that I read off are directly from the… I'm curious, and I'll read it myself later. I'm looking at the second paragraph of the trial court order. It says, according to the testimony, the process took approximately 14 minutes from the stop to issuing a warning ticket. Trooper Marlin then asked the defendant if he could search the automobile. The defendant said no. The defendant had signed a written warning, and the trooper testified that the traffic stop was completed. But then further down, it says the trooper testified that he called for the dog and that his bottom lip was quivering. This is all just what the trooper testified to. It's not a court finding as far as I can glean. I read that as findings of fact by the trial court in what supported the officer's reasonable suspicion. I guess it doesn't actually say that, but I'm assuming it's in the order to provide findings of fact. In this case, the investigative stop and the reliance on the drug dog to get there, I don't believe it unreasonably delayed the detention. Could the defendant get his phone on and talk up his lawyer? No, the officer did not allow him to call his attorney. But he did ask. He did request. Yes, I believe he did request. And he could not do it, right? No, the officer did not allow him to do it. And he told the defendant the reason why was because of trooper safety. And he told the defendant that this was just a traffic stop at this time, and he would not allow him to make a phone call. The trooper couldn't be sure who he would call, and the trooper was afraid for his own safety. What? Tell him about the phone or something or what? I mean, what's he going to do? I think the trooper was probably unsure of whether or who it was that the defendant might call and that other people might arrive on the scene that might put the officer at risk. That's what he said. He didn't say that, but he said it was officer safety, a due to officer safety. I'm just making that reasonable assumption that that's what the officer was afraid of in this case. That's what you're thinking it was. I believe that's probably why the officer made that statement, that he was concerned about his own safety, officer safety. In any event, we believe that the record does support, along with the videotape that I apologize you had to watch that. Well, there's a lot of dead space. But what I will say is that I thought he was incredibly cool and collected up until the time the dog shows up, at which time he's very agitated, but that's after the fact for sure. Yeah, I believe he did become agitated after the fact. I happen to disagree about the licking of the lips and extreme rubbing of the forehead, removing glasses and putting them back on. Yeah, but this is over, like, it was probably up in, I guess it was 40-something minutes until the dog arrived, and there was occasional taking sunglasses off. I mean, he has got a video right at his face, and so you observe every single movement. Right, and it does seem to be right at his face. But I think, according to the testimony of the officer, he believed that there was reasonable suspicion for drug activity. I think there were other things in the record that probably lended support to that conclusion. The trial court didn't seem to focus on that and rather focused on the length of the detention. I believe that's an improper focus. The court should have looked at the totality of the circumstances. Can I ask you one more thing? I think you argue that everybody concedes that the stop was reasonable. Well, apparently Ms. Fleason doesn't agree with that, that the stop was reasonable. But my conclusion is that my review of Illinois, I believe that the judge concluded that, although it doesn't specifically say that. It doesn't, it doesn't. And the reason I say that is there would be no reason to go forward on determining the length of the detention and whether or not it was too long or reasonable under the circumstances. If the traffic stop was bad, the court could have just stopped there and that would have been the end of it. Now, I was a little misled, and it wasn't anybody's deliberate, but I was trying to visualize these clipped together deodorizers or whatever they are. And they are back-to-back, so it's really only one. I would acknowledge that from the officer's viewpoint in the median looking out over the interstate, there's no way he could have been able to tell whether there were two air fresheners. I'm amazed that he can tell there's anything hanging there. You know, they seem to be able to tell with a little sticker on the license plate or whether or not your registration line is functioning. And I guess it all goes to their training and experience, but they tend to see things I don't see. Now, the trooper seemed to put a lot of weight on the fact he would not give consent, and he was requiring to bring the dog out. Now, the court can't consider that in determining whether there was anything. No, I don't believe the court can. I believe you're entitled to refuse to consent in the state of Illinois, and I believe that is a proper view of the law. Thank you, Your Honor. Thank you. Mr. Gleason. Thank you, Your Honor. May it please the court. If I could start briefly by responding to a question that Justice Chapman asked. No, the judge did not find that Thomas Moffitt was this lip-licking nervous wreck that the trooper described. In his findings of fact in the order, the judge just said the trooper testified that the trooper did this and that. He does not say that he believes the trooper when he says that Thomas Moffitt did this or that, and the judge does not say that he also thinks that Thomas Moffitt was the lip-licking nervous wreck described. So that's the answer to that question. I would like to begin by addressing the question of whether the initial stop was lawful. The answer to that question turns on whether there was reasonable belief that the obstructed window, obstructed windshield statute was being violated, and the answer to that question turns on whether it was reasonable to believe that this air freshener was materially obstructing the driver Thomas Moffitt's view. Now the trooper testifies he does not stop every car that has something on the rearview mirror. He does not stop every car that has a handicapped sticker on the rearview mirror, but he did stop this Ford Taurus on I-70 that morning, and he told the driver, you can't have anything hanging from your mirror. Studies show that it obstructs your view of your vision of the roadway, he says. Now of course the vehicle code does not actually say you can't have anything hanging from your mirror. The vehicle code says you can't have anything that materially obstructs the driver's view. Here I suggest that we keep in mind Webster's definition of material being of real importance or great consequence. So a material obstruction is an important or consequential obstruction. Illinois courts go along with this view in the decision in People v. Cole, which the state addresses in its brief. The appellate court emphasizes that a simple obstruction does not violate the statute. Only a material obstruction violates the statute. So the question is, did this air freshener materially obstruct the driver, Thomas Moffitt's view? Of course my answer is no, but I would suggest that Your Honors look at the photographs that are part of the record in this case. Troopers took some photos, a defense investigator took a photo or two. They're pretty standard. I mean, we've all seen the little Christmas tree, or not Christmas tree, it's like a pine tree. Right. As the trooper testified, it's an ordinary air freshener of the kind you see in every gasoline station for sale. And after I wrote my brief, I started noticing these things all over the place. And I couldn't imagine all these people are in violation of the traffic code. Every time they get out of their car and start to drive on a roadway, or anywhere else perhaps. But anyway, the question is whether the air freshener materially obstructed the driver, Thomas Moffitt's view. And if you look at the photos that these troopers took, it's as if they were trying to create this impression that, you know, how could anybody even think of driving a car with this huge object between himself and the windshield? I mean, the way the troopers contrived these photos with the camera angles and the posing, I mean, you get the impression that this air freshener must have had the dimensions of a balloon bouquet.  Then you look at a photo taken by the defense investigator, and apparently all he did was walk up to the front of the Taurus, point his camera at it, and click. No artistry involved. And if you look at that photo, you see that this air freshener is really quite tiny. And it's off to the side. The driver's side. Not in front of him, it's off to the side. And it's not hanging particularly low either. And that reminds me of something. One last point. The question is whether the object materially obstructed the driver's view. Last evening, I reread the synopsis of the trooper's testimony of this aggression hearing. The trooper never testifies that this air freshener was in Moffitt's line of vision, whether his line of vision was up here, down here, wherever. In that regard, this case is quite a bit like People v. Mott. There, the trial judge said there was no testimony that this sleeve-shaped air freshener was in the driver's line of vision. And the appellate court, affirming the trial judge, pointed that out also. There was no evidence that this particular air freshener was in this particular driver's line of vision. So when there's no evidence that the object was in the driver's line of vision, how can anybody say that the object materially obstructed the driver's view? At any rate, unless there are questions from the court, we now have covered both of the issues at one point or another, so I will stop there. Thank you. Thank you. Any rebuttal? Yes, Your Honor. Multiple air fresheners hanging from a rearview mirror have been found to constitute a material obstruction sufficient to satisfy probable cause. That's People v. McCown. It's a 4th District 2011 case. Well, no, when you say multiple, to say that this had the effect of being multiple is kind of misleading because they were back-to-back, so they basically were no different than having one. I believe that's exactly what happened in the McCown case. Okay. But in any event, there's a 2nd District case, People v. Jackson from 2002, two leaf-shaped air fresheners hanging from the rearview mirror constituted constitutional stuff, and the proper focus is not whether or not the offense was actually committed, but whether the arresting officer reasonably suspected at the time of the stop that criminal activity was taking place. The Mott case that Mr. Gleason is talking about involved a much smaller, almost half the size of the air freshener in this case. I believe it was a couple of cherries with a stem, a thin stem, and in this case the defendant admitted that the air freshener did obstruct his view of the roadway. He admitted that when the officer mentioned that to him. I'd just like to make or visit the People v. O'Dell case where the court held that the Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. In this case, the officer told the defendant within the first two minutes, I believe it was at a minute 40 seconds, he was only going to get a warning ticket. The defendant continued to have extreme nervous behavior, what I would consider extreme nervous behavior, the officer testified he did, and under Officer Marvel's common sense, his education, training, and experience, it led him to believe that further criminal activity was afoot, and the most reasonable step he could take without consent to search was to call a drug dog. It took a little bit longer than the officer would have liked, but it was not a canine unit, and it took 50 minutes for the actual drug dog to get there. So in this case, we ask you reverse and remand the matter back to the trial court. Thank you. Thank you. Thanks to both of you for your arguments and briefs today, and we'll take the matter under advice. That's the last case for the morning. The remaining cases on the docket for today, oral argument has been waived, so the court will be in recess until tomorrow morning. Thank you.